DÍAZ ET AL., PETICIONARIOS Y APELADOS, *v.* DÍAZ, OPOSITOR APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama en pleito sobre administración judicial de una comunidad.

No. 2093.—Resuelto en junio 24, 1920.

ABOGADO Y CLIENTE—ACTUACIONES DEL CLIENTE—ESTOPPEL.—Por muy censurable que sea la conducta de un juez llamando a su despacho a las partes componentes de una comunidad de bienes, sin citación de sus abogados, para terminar una administración judicial pendiente y activar la división inmediata de los bienes, no será revocada en apelación una orden nombrando contador partidor de tales bienes, cuando dicha orden fué resultado del mutuo convenio de las partes, el apelante entre ellas. El mero hecho de que no se tuvieran en cuenta los derechos de los abogados no puede eximir a un cliente de responsabilidad por sus propios actos, sobre todo, no habiendo demostrado que la orden por él consentida le causara verdadero perjuicio.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. J. C. Ramos.*

Abogado de los apelados: *Sr. T. Bernardini.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Enriqueta Díaz y Anes de Calimano; María Hortensia Díaz y Molinari, por sí y como representante legal de sus menores hijos Hortensia, Nieves y Antonia de Argüelles y Díaz, María Esperanza Díaz y Molinari; Domingo W. Palés y Anes y Juan Carlos McCormick y Hartmann, en y con anterioridad al día 22 de mayo de 1915 eran condueños de tres fincas rústicas conocidas por "Hacienda Merced," "Río Jueyes" y "Vacas," en la siguiente proporción:

Enriqueta Díaz, María Hortensia Díaz, los hijos de esta última y María Esperanza Díaz, a cada una dos novenas partes.

Domingo W. Palés un tercio de una novena parte y a sus hijos Luisa María, Mercedes, Lucila, Enrique y Jesús María Palés, cada uno un séptimo de dos terceras de una novena parte y Juan Carlos McCormick dos séptimas de las dos terceras de una novena parte.

Rufina Molinari Sánchez, usufructuaria de estas fincas, como viuda de Ignacio Díaz Joglar, falleció en julio 3 de 1914, y habiéndose negado su esposo sobreviviente, el señor Cividanes a hacer entrega de dichas propiedades, los condueños arriba descritos en mayo 22 de 1915 solicitaron y obtuvieron el nombramiento de un administrador judicial que tomó posesión de las fincas en cuestión.

En septiembre 22 de 1916 la sucesión de Carlos McCormick adquirió la participación de Enriqueta Díaz en sustitución de dicha Enriqueta Díaz y la del referido Juan Carlos Mc-Cormick.

Posteriormente, Ramón Pastor Díaz, apelante en este caso, adquirió las dos novenas partes pertenecientes a los menores hijos de Hortensia Díaz a quienes asimismo sustituyó.

La participación de la sucesión de J. C. McCormick fué traspasada a A. Hartmann & Co. en marzo 9 de 1918, haciéndose igual sustitución.

En febrero 13 de 1918 Hartmann & Co. adquirió también la participación de María Hortensia Díaz, sustituyendo de este modo a esta última.

En marzo 9 de 1918 María Esperanza Díaz permutó su participación en la hacienda "Mercedes" por la de A. Hartmann & Co. en la de "Vacas" y "Río Jueyes," y en 13 de dicho mes Domingo W. Palés cambió su participación en la finca "Mercedes" por la de A. Hartmann & Co. en la de "Vacas" y "Río Jueyes." Y A. Hartmann & Co. vendió también a María Esperanza Díaz la participación adquirida por ellos de Hortensia Díaz en "Vacas" y Río Jueyes."

En mayo 25 de 1918 falleció el administrador judicial y los distintos condueños con la sola excepción de Ramón Pastor Díaz, apelante en este caso, solicitaron y obtuvieron el nombramiento de un administrador interino.

En enero 7 de 1919 A. Hartmann & Co. solicitaron el nombramiento de un administrador en propiedad.

Al día siguiente Ramón Pastor Díaz, por medio de su abogado, compareció y alegó los varios cambios que habían ocurrido en el dominio durante el curso de la administración que dió por resultado dos comunidades distintas, a saber: la hacienda "Mercedes" y las otras dos propiedades arriba descritas; indicó que ya no existían razones que obligaran a las partes interesadas a solicitar el nombramiento de una administración judicial y sugirió que estas comunidades debían regirse por las reglas y principios establecidos por el Código Civil para tales casos; que no debía designarse ningún administrador judicial en propiedad y que la administración interina debía terminar; o, de otro modo, en el caso de continuar la administración judicial que dicho Ramón Pastor Díaz fuese nombrado administrador en propiedad, estando él conforme con prestar sus servicios sin recompensa o sueldo, en prestar cualquier fianza que pudiera exigírsele y liquidar dicha administración dentro del tiempo más corto posible.

Esta moción estaba jurada por Ramón Pastor Díaz, quien

manifestó en ella que la había leído y que había sido redactada de acuerdo con las instrucciones que él dió a su abogado.

En la misma fecha el referido Ramón Pastor Díaz, por medio de su abogado y en relación con la cuestión del nombramiento de un administrador judicial en propiedad, manifestó en otra moción qué el administrador interino, propuesto por Hartmann & Cía. y María Esperanza Díaz para que fuera nombrado administrador en propiedad no podía ser elegido por los motivos siguientes: (*a*) porque no había administrado los bienes confiados a su custodia como un entendido y cuidadoso padre de familia; (*b*) porque no había cumplido durante su administración con los deberes inherentes a su cargo; (*c*) porque no era competente para dicho cargo y había fracasado generalmente en la administración de sus propios bienes; (*d*) porque era un enemigo personal del condómine Ramón Pastor Díaz, y (*e*) porque allá por el día 31 de julio de 1918 el propuesto administrador presentó o hizo presentar una denuncia imputándole al referido Ramón Pastor Díaz el delito de hurto, habiendo éste sido absuelto.

En abril 21 de 1919 los varios condueños celebraron una reunión en el despacho del juez de distrito de acuerdo con su convocatoria. El juez entonces, después de manifestar que el objeto de la reunión era cambiar impresiones en cuanto a la comunidad de bienes, sugirió que la administración hacía demasiado de tiempo que estaba pendiente y no había motivo alguno para que continuara si los condueños estaban dispuestos a terminar dicha administración; que la ley establecía el procedimiento para el nombramiento de un contador partidor de los bienes a solicitud del administrador después de ser liquidados los bienes que se encontraban bajo administración; que las cuentas presentadas por el administrador demostraban tal liquidación de los bienes y que no existían deudas y por consiguiente debía procederse a la división y partición de la herencia. El juez preguntó entonces si los que estaban presentes se encontraban dispuestos

a que se hiciera la división o si preferían que continuara la administración. Las siguientes son las constancias de lo que ocurrió entonces:

"McCormick: Con respecto a la participación que yo represento, señor Juez, que se refiere sólo a la hacienda Merced por haber hecho permutas con otros de los condueños, ya tenemos transado con el otro condueño en la hacienda Merced, Pastor Díaz, y se puede decir que todo está amistosamente arreglado, pendiente nada más que de una pequeña diferencia en la transacción, que si se quiere resolver aquí mismo me permito nombrarle árbitro.

"Juez: Yo quiero saber si Uds. están dispuestos a esa división, de todos los bienes de la comunidad.

"Pastor Díaz: Hoy se puede decir que la comunidad de bienes está dividida en dos comunidades, la que pertenece al Sr. Harry McCormick y la mía, eso ya está terminado amistosamente, hemos convenido la división y solamente depende de la liquidación de las cañas, liquidación del ganado, boyada, carros y demás. Ahora falta en cuanto a la de doña·María Esperanza y yo, y el señor Palés. En cuanto respecta a mi yo estoy decidido a que se divida inmediatamente; es todo lo que puedo decir.

"Isolinda Díaz: Yo lo mismo.

"Juez: Entonces todas las partes están conformes en que se proceda a la división de la herencia. (A Pastor Díaz): ¿En la división de Vd. y del señor McCormick hay algo o se trata aquí de dividir bienes en los cuales también tienen participación los demás condueños?

"Pastor Díaz: No, señor, en cuanto respecta a la hacienda Merced, no, los demás condueños no tienen participación, eso es del Sr. McCormick y yo solamente.

"Juez: ¿Pero eso está dentro de la administración?

"Pastor: Dentro de la administración judicial, el Sr. Palés es el administrador judicial.

"Domingo Palés: Ellos han hecho un convenio que están para firmar, separando las dos parcelas que corresponden al señor Pastor, solamente está pendiente la tasación de los bueyes y otras tonterías, pero en lo principal, la división del terreno, están ya de acuerdo.

"Pastor Díaz: Queda por dividir las cañas y productos de las cañas, hacer la liquidación de las cañas que se están moliendo actualmente en la central Machete, falta por dividir algunos edificios, bueyes, caballos, calesas y nada más; algunos bienes muebles; en

cuanto a terrenos amistosamente hemos ya dividido el señor Mc-Cormick y yo en casa de A. Hartmann y Cía.

"JUEZ: ¿El Sr. McCormick tiene algún interés en las demás partes de los bienes de la administración que no están incluídos en la hacienda Merced?

"McCORMICK: En el momento presente, nada.

"JUEZ: La corte librará una orden requiriendo al administrador para que solicite de la corte el nombramiento de un contador partidor, a los efectos de dividir los bienes de la administración no comprendidos en la hacienda Merced o sea los bienes sobre los que han transado los señores Pastor Díaz y McCormick. Ahora yo desearía que los condueños me indicasen a una persona a quien ellos estimen que pueda desempeñar el cargo de contador partidor para dividir esa herencia. El señor Pastor Díaz puede indicar.

"PASTOR DÍAZ: En los momentos no puedo indicarle a nadie.

"JUEZ: El señor Domingo Palés.

"PALÉS: Yo, al señor Calimano.

"JUEZ: La señora Isolina Díaz.

"ISOLINA DÍAZ: También.

"JUEZ: Los señores Palés e Isolina Díaz proponen a la corte como contador partidor al señor Fernando Calimano; el Sr. Pastor Díaz se reserva el derecho hasta mañana de indicar a la corte el nombre de la persona que él propondría como contador partidor.

"JUEZ: En el día de hoy y estando reunidos en el despacho del juez los copartícipes en la comunidad de bienes, todos anunciando a la corte estar dispuestos a que se proceda a la partición de la herencia, solicitando la división de la misma y apareciendo de las cuentas de la administración que ésta se encuentra en estado líquido y por consiguiente lista para ser dividida la corte ordena al administrador judicial interino, Sr. Domingo Palés, proceda dentro del término de tres días a solicitar de la corte el nombramiento de un contador partidor a los efectos de que proceda a la división y partición de estos bienes pertenecientes a la administración judicial. ¿Estarían Vds. dispuestos a aceptar que se dividiese en tantos lotes como herederos hay?

"PASTOR DÍAZ: Sí, señor, estoy de acuerdo con eso.

"JUEZ: ¿De acuerdo con la tasación hecha ya?

"PASTOR DÍAZ: Que se tasen nuevamente porque el precio ese está muy alto. Hoy no vale una yunta $200, uno que lo necesitara podría pagar $200 y hasta $200 y pico pero en el mercado no valen

actualmente $200 una yunta de bueyes, de modo que haciendo una nueva tasación y adjudicándole partes iguales entre los herederos."

Consta además en los autos la siguiente orden:

"En el día de hoy y estando reunidos en el despacho del juez los copartícipes en la comunidad de bienes todos anunciando a la corte estar dispuestos para que se proceda a la partición de la herencia solicitando la división de la misma y apareciendo de las cuentas de la administración, que ésta se encuentra en estado líquido y por consiguiente lista para ser dividida, la Corte ordena al administrador judicial interino, Sr. Domingo W. Palés, proceda dentro del término de tres días, 'a solicitar de la corte el nombramiento de un contador partidor, a los efectos de que proceda a la división y partición de estos bienes pertenecientes a la administración judicial.''

En abril 22 el administrador interino solicitó el nombramiento de un contador partidor con el objeto de proceder a la partición y división de los bienes bajo administración judicial. La corte entonces dictó la siguiente orden:

"Por cuanto se ha presentado ante esta corte una petición del administrador judicial interino solicitando se nombre un contador partidor con el objeto de dividir y terminar la administración pendiente ante esta Corte.—Por cuanto las partes han manifestado a la corte que piden se proceda a la división y adjudicación de los bienes entregando a cada uno lo que en ley le pertenezca, habiendo sometido a la corte los condueños de siete novenas partes el nombre de don Fernando Calimano, persona que merece la consideración de la corte por su honradez e inteligencia. Por cuanto al condueño, Sr. Pastor Díaz le fué concedido un plazo y éste ha expirado sin que haya sometido nombre de persona alguna para ese cargo teniendo el conocimiento de que los demás condueños habían propuesto al señor Calimano, la corte, por tanto, nombra a don Fernando Calimano contador partidor de los bienes pertenecientes a la comunidad de bienes, debiendo dicho contador partidor ser puesto en posesión de todos los bienes pertenecientes a la administración, quedando autorizado para ejercer cualquier derecho que como tal contador partidor la ley le conceda, efectuar tasaciones, oir informes de peritos, etc., etc., disponiéndose que habiéndose anunciado a esta Corte existir una transacción entre los condueños, Sr. Pastor Díaz y Mr. Harry McCormick, se aceptará tal transacción tal cual ha

sido convenido por las, partes. Dicho contador partidor deberá presentar su informe dentro del término de sesenta días a contar desde la fecha en que preste el juramento de su cargo, a menos que la corte por causa justificada le conceda una prórroga. Notifíquese a las partes para su debido conocimiento."

En julio 11 de 1919, Ramón Pastor Díaz, por conducto de su abogado, presentó a la corte una solicitud para que se anularan y dejaran sin ningún valor estas dos órdenes y nula y sin ningún valor también la actuación del contador partidor nombrado.

La moción alega en substancia que el juez sentenciador había reunido en su despacho a los diferentes copartícipes en la comunidad sin asistencia de sus abogados; que el abogado del peticionario nunca fué notificado de la orden disponiendo que el administrador interino solicitase el nombramiento de un contador para la división y partición de los bienes en comunidad sino que precisamente lo había averiguado al reunir y poner en orden en la, oficina del secretario los varios documentos que constituyen los autos del presente caso; que dicha orden no fué nunca registrada en las minutas de la corte o en algún otro registro; que no se recibió notificación alguna de la moción de dicho administrador interino pidiendo el nombramiento de tal contador partidor y que de eso tuvo conocimiento asimismo en la forma indicada; que el abogado no había recibido notificación alguna de la orden de fecha abril 24 de 1919 nombrando un contador partidor ni de que tal contador partidor había entrado en funciones como tal hasta que en junio 30 de 1919 su cliente fué notificado personalmente de que en julio 3 de 1919 el referido contador procedería a dividir dichos bienes; que la orden nombrando a dicho contador tampoco fué registrada o anotada en las minutas de la corte u otro libro registro; y que el abogado había aconsejado a su cliente, Pastor Díaz Molinari, que no reconociera la autoridad de dicho contador partidor y no asistiera a la reunión convocada por él por

carecer de jurisdicción la corte de distrito para hacer el nombramiento para el fin indicado. Se hizo también mención de la anterior sugestión de que las comunidades debían regirse por las disposiciones del Código Civil, que no debía nombrarse un administrador en propiedad y que la administración interina debía terminarse; manifestó además el abogado que el record taquigráfico de la reunión informal en el despacho del juez de los copartícipes sin la asistencia de abogados demuestra que su cliente nunca estuvo conforme en que se hiciera la partición por un contador partidor como si se tratara de una herencia o sucesión, habiendo manifestado dicho cliente simplemente que estaba conforme "en que se dividieran inmediatamente" todos los bienes de la comunidad, sin renunciar a que dicha división se efectuara como tiene que efectuarse la división de toda comunidad con sujeción a los principios legales dispuestos para tales casos por nuestro Código Civil. Alegaba además la moción que habiéndose cometido los errores apuntados se había dispuesto de la propiedad de Pastor Díaz sin el debido proceso de ley, no habiéndole dado la corte antes oportunidad de ser oido por su representación legal antes de disponer el nombramiento del contador partidor quien ya había dispuesto de su propiedad, dividiendo la misma sin autoridad o competencia para ello.

La anterior moción fué desestimada por orden de 21 de julio de 1919, y de esa orden apeló Pastor Díaz, cuya representación en el señalamiento de errores prácticamente discute las mismas cuestiones levantadas en la moción.

No creemos necesario discutir en sus pormenores todas las cuestiones que de tal modo han sido promovidas.

La actitud asumida por el juez sentenciador al convocar a las mismas partes interesadas a su despacho sin notificar a sus abogados ha sido duramente criticada en el alegato del apelante. En tanto en cuanto se trata solamente de la

mera cuestión de procedimiento, tal conducta envuelve un completo menosprecio de los derechos y privilegios de un abogado de record, y lo menos que puede decirse es que no merece nuestra aprobación.    Pero no se trata en este caso tanto del hecho de haberse herido los sentimientos y sensibilidad y justa indignación del abogado como del derecho que de acuerdo con la ley tiene el apelante Pastor Díaz para insistir en que se revisen los procedimientos en los cuales tan activamente tuvo participación.

"Un cliente puede en cualquier estado del caso transigir o desistir su acción o pleito aún cuando su abogado se oponga.    Siendo revocable la autoridad que tiene un abogado, cuando convenga a su cliente dicho abogado no puede oponerse a ninguna acción que dicho cliente pretenda tomar.    El no adquiere ningún verdadero derecho en el asunto que pueda quedar afectado por el desistimiento del pleito."    6 C. J. 643.

"Por lo general un litigante puede disponer en cuanto a una acción que tiene pendiente y en la cual es parte demandante, según su criterio e inteligencia se lo aconseje, y si un demandante se resuelve transigir o no seguir una acción sin el consentimiento de su abogado él tiene perfecto derecho a hacer esto y la acción debe ser desestimada a virtud de su moción.    Esta regla, según parece, no es sino justicia natural que confiere a un individuo su indiscutible derecho a dirigir sus propios asuntos de acuerdo con su criterio de qué es lo que más conviene a sus intereses particulares.    Una parte no puede ser responsable por mayores costas, honorarios de abogado y otros gastos incidentales a la continuación del pleito contra su expresa voluntad y deseo."    *Idem,* nota, 13, donde se cita el caso de *Williams* v. *Miles,* 89 N. W. 455.

El artículo 409 del Código Civil prescribe lo siguiente:

"La división de la cosa común podrá hacerse por los interesados o por árbitros o amigables componedores nombrados a voluntad de los partícipes.

"En el caso de verificarse por árbitros o amigables componedores deberán formar partes proporcionales al derecho de cada uno, evitando en cuanto sea posible los suplementos a metálico."

El artículo 413 prescribe que "serán aplicables a la di-

visión entre los partícipes en la comunidad las reglas concernientes a la división de la herencia.''

Por regla general cada parte puede someterse a arbitraje en cualquier momento antes de que se haya hecho una adjudicación. Pero ''el peso decisivo de las autoridades es que cuando la sumisión se convierte en regla de la corte no puede ser revocada sin permiso de la corte.'' 5 C. J. 54.

Y ''cuando las partes en un pleito en equidad después de trabada la contienda y pendiente de pasar esta a un árbitro, presentan un convenio para someter la controversia a la resolución final de árbitros y por virtud de tal convenio la corte, a solicitud de las partes, deja sin efecto el nombramiento del árbitro, el convenio de referencia virtualmente queda convertido en regla de la corte y no puede ser revocado.'' *Idem.*, nota 26 (a) donde se cita White's App. 108 Pa., 473.

Otra regla general bien conocida es la siguiente:

''Cuando una parte solicita que se dicte o registre una sentencia, decreto u orden, o es responsable por cualquier error de la misma, dicha parte está impedida de alegar en apelación o recurso de error que dicha sentencia es errónea. El que solicita y obtiene un remedio no puede apelar de la resolución que se le concede por la razón de que el efecto es distinto de lo que esperaba.'' 4 C. J. 716.

''Cuando una parte deliberadamente consiente en el juicio que se registre una orden o resolución o se dicte una sentencia o adopte cualquier procedimiento incidental al juicio y tal resolución, acción o procedimiento no constituye error fundamental, dicha parte está impedida de alegar que se haya cometido error en ellos, en la corte de apelación, especialmente cuando los errores no eran perjudiciales.'' Idem 717.

Es cierto como ha sugerido el abogado del apelante y como nosotros ya hemos indicado, que por lo general es el abogado y no el cliente quien renuncia a las cuestiones que surjan durante el curso del juicio; y de ser las cuestiones alegadas relativas a meros incidentes que solo afectan a la forma

de llevar los procedimientos, o si cualquier ventaja indebida
fué tomada por el apelante, o si todo el conocimiento que él
tenía de la situación y de la actitud que deliberadamente asu-
mió no fueron por sí tan claros, o si se hubiera demostrado
algún verdadero perjuicio, podríamos inclinarnos a adoptar
un criterio distinto respecto a la cuestión.  Pero los hechos
arriba referidos demuestran que el objeto de la reunión cele-
brada en el despacho del juez sentenciador así como el fin
principal del convenio que allí se llevó a efecto era termi-
nar la administración pendiente procediéndose a la división
inmediata de los bienes envueltos en ella; y que el método
adoptado era para todos los fines y propósitos prácticos que
se nombrara árbitro o amigable componedor con el fin de
llevar a cabo ese convenio.  La forma en que dicho árbitro
fué elegido, el nombre por el cual fué designado, la circuns-
tancia de que su informe había de ser sometido a la corte
para su aprobación final y el hecho adicional de que el pro-
cedimiento así adoptado se ajustó más o menos al prescrito
para la división de una herencia y la liquidación de una ad-
ministración judicial no son cuestiones de importancia vital
excepto en cuanto dieron por resultado que la sumisión vir-
tualmente se convirtiera en una regla de la corte y por tanto
era irrevocable.

La acción del juez sentenciador en tomar la iniciativa sin
notificar a los abogados y sugerir el hecho de que a todo el
asunto se le diera este trámite, por irregular e improcedente
que fuera, fué gustosamente aceptada y seguida por el ape-
lante.  Los acontecimientos subsiguientes, incluyendo el in-
forme del contador partidor, pueden haber puesto de mani-
fiesto la improcedencia de tal actuación pero el mero hecho
de que no se tuvieran en cuenta los derechos de los aboga-
dos no puede eximir a un cliente de toda responsabilidad por
sus propios actos.

El apelante se había opuesto tenazmente a que continuara
la administración judicial e insistió asiduamente en que se

procediera inmediatamente a la división de los bienes. En cuanto a esto, por lo menos, el resultado práctico de la acción tomada por la corte estuvo en general, de acuerdo con sus deseos. Ni puede tampoco restringirse su consentimiento de lo que se hizo a los estrechos límites sugeridos por el abogado. No es necesario repetir aquí lo que consta del record taquigráfico *supra* para demostrar que el apelante de un modo tácito, sino expreso, consintió en todo lo que se hizo y que lo hizo así, sabiéndolo.

Los procedimientos anteriores a éste caso han estado varias veces ante esta corte y estamos enteramente de acuerdo en lo que parece ser la opinión de todas las partes interesadas, incluyendo la del juez sentenciador, de que era de desearse fervientemente que se llegase a alguna conclusión en el asunto.

Se sugirió en la vista que debía desestimarse la apelación sin entrar en sus méritos, y tal vez eso hubiera procedido por la autoridad del caso *Ex-parte Boerman* y *Marrero*, resuelto en febrero 20, 1920, (pág. 83) y *A. Hartman & Cía.* v. *Cividanes* de enero 29, 1920, (pág. 32). Pero en vista de las circunstancias especiales envueltas y de la insistencia con que se llamó la atención de este tribunal al aspecto general de los procedimientos habidos en la corte inferior y por cuanto la desestimación de la apelación sería en efecto equivalente a una confirmación, hemos preferido examinar los autos con algún cuidado para determinar si el apelante mismo, a diferencia de su abogado, tiene o no verdadero motivo de queja.

La orden apelada debe ser confirmada.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.